UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ALLEN STEIN, as Trustee of the Rachel
Meisels Irrevocable Trust 2006B

                    Plaintiff,

      -against-

AMERICAN GENERAL LIFE INSURANCE
COMPANY,

                    Defendant.
--------------------------------------------------------X

Docket No.: 11-CV-6009 (DLI) (JO)


**PLAINTIFF'S MEMORANDUM OF LAW IN REPLY TO THE OPPOSITION BY
AMERICAN GENERAL LIFE INSURANCE COMPANY TO PLAINITFF'S MOTION
FOR SUMMARY JUDGMENT**


**LIPSIUS-BENHAIM LAW, LLP**
**Attorneys for Plaintiff**
**80-02 Kew Gardens Road, Suite 1030**
**Kew Gardens, New York 11415**
**212-981-8440**

**Of Counsel:**
    **Ira S. Lipsius**
    **David BenHaim**
    **Cheryl D. Lipsius**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................ 2

   A.  AMERICAN GENERAL MISQUOTES THE MAY 18, 2009 NOTICE ......................... 2

   B.  THE INCONSISTENCIES IN THE MAY 18, 2009 NOTICE ARE FATAL ................... 4

   C.  THE LAPSE OF THE POLICY IS INVALID BECAUSE AMERICAN GENERAL
   OFFERED THE TRUST TO SEND A REPLACEMENT CHECK ......................................... 6

   D.  JEFFREY CISZEWSKI CANNOT HAVE PERSONAL KNOWLEDGE OF THE
      MAILING PROCEDURES AT THE HOUSTON FACILITY WHEN THE
      MAY 18, 2009 NOTICE WAS SENT BECAUSE HE DID NOT WORK THERE
      AT THAT TIME ................................................................................................ 7

CONCLUSION ..................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Badio v. Liberty Mut. Fire Ins. Co*.,
   12 A.D.3d 229, 785 N.Y.S.2d 52 (1st Dept. 2004) ................................................................. 9

*Berkshire Settlements, Inc. v. Ashkenazi*,
   2011 WL 5974633 (E.D.N.Y.) ................................................................................................. 2, 7

*Duhs v. Royal Globe Ins. Co.*,
   63 A.D.2d 992, 992-993 (N.Y. App. Div. 2d Dep't 1978) ...................................................... 5

*Government Employees Ins. Co. v. Mizell*,
   36 A.D.2d 452, 453-454 (N.Y. App. Div. 4th Dep't 1971) .................................................... 5

*Hohmann & Barnard, Inc. v. Sciaky Bros*.,
   333 F.2d 5, 9 (2d Cir. 1964) .................................................................................................. 8

*In re Preston's Will*,
   29 N.Y.2d 364 (N.Y. 1972) .................................................................................................... 4

*Jefpaul Garage Corp. v. Presbyterian Hospital*,
   61 N.Y. 2d 442, 462 N.E.2d 1176, 474 N.Y.S.2d 458 (1984) ............................................... 8

*Maloney v. John Hancock Mut. Life Ins. Co.*,
   271 F.2d 609 (2nd Cir. N.Y. 1959) ....................................................................................... 4

*Messing v. Nationwide Mut. Ins. Co.*,
   42 A.D.2d 1030, 1031 (N.Y. App. Div. 4th Dep't 1973) ...................................................... 5

*Nassau Ins. Co. v. Hernandez*,
   65 A.D.2d 551, 552 (N.Y. App. Div. 2d Dep't 1978) ............................................................ 5

*Nassau Ins. Co. v. Murray*,
   46 N.Y.2d 828, 829 (1978) ................................................................................................... 9

*Owusu v. New York State Ins*.,
   655 F.Supp.2d 308 (S.D.N.Y. 2009) .................................................................................... 10

*Puma  Industrial Consulting, Inc. v. Daal Associates*,
   No. 84 Civ. 3137, Slip  op at 5 (S.D.N.Y. Sept. 9, 1986) .................................................... 8

*Reliance Ins. Co. v. Rabinowitz*,
   65 A.D.2d 619 (N.Y. App. Div. 2d Dep't 1978 ................................................................... 5

*Speziale v National Life Ins. Co.*,
   159 Fed Appx. 253 (2nd Cir. 2005) ..................................................................................... 4

*Tower Ins. Co. of N.Y. v Ray & Frank Liq. Store, Inc*.,
   104 A.D.3d 482, 482-483 (N.Y. App. Div. 1st Dep't 2013) ................................................. 10

*Tower Ins. Co. of New York v. Rite Way Corp.*,
   2010 WL 2754066, \*2754066+, 2010 N.Y. Slip Op. 31640(U),
   31640(U)+ (Trial Order) (N.Y.Sup. Jun 23, 2010 NO. 105179/2006) .................................................. 10

*Victor v. Turner*,
   113 A.D.2d 490, 498 (2nd Dept. 1985) ..................................................................................... 6

*Webster's Red Seal Publications, Inc. v. Gilberton World Wide Publications, Inc.*,
   67 A.D. 2d 339, 341, 415 N.Y.S. 2d 229, 231 (1979) ................................................................. 8

*Zeligfeld v. Phoenix Life Insurance Company*,
   2013 N.Y. Misc. LEXIS 1574 (April 17, 2013) ......................................................................... 6

## Statutes

New York Insurance Law §3211 ................................................................................................. 3, 4

## <u>PRELIMINARY STATEMENT</u>

Hidden within American General's opposition is a clear admission that plaintiff is entitled to summary judgment.  American General dedicates a great majority of its nineteen page memorandum of law trying to explain what the lapse notice dated May 18, 2009 meant. This fact alone highlights just how confusing the notice actually was to a policyholder and establishes that the notice failed to provide the required information in a "clear and unequivocal" fashion as required by law.

Further, American General's only response to the Trust's claim that the notice misidentified the due date by requiring payment "before" July 20, 2009 is to alter the language of the May 18, 2009 notice. American General argues that the May 18, 2009 stated that payment is due "by July 20, 2009." (Memo of Law p. 9, last paragraph) This is not true. The notice stated:

> Even though you may have been making regular premium payments on your policy, the current values are insufficient to cover the monthly charges due May 18, 2009.  This policy is in its grace period and will terminate without value unless a payment of $22,361.91 is received prior to July 20, 2009.

By requiring payment "prior to July 20, 2009" American General misidentified the due date.  Had the notice actually stated "by July 20, 2009" as American General fantasizes it did, the notice would not have been deficient on this basis.

American General also fails to comprehend the basic tenet of New York's public policy against forfeiture and the way this public policy has evolved to become current law. American General cites decisions from 1892 (Memo of Law, page 4) and 1905 (Page 10) in its attempted portrayal of the current status of the law. Much has changed since 1892. New York law disfavors forfeiture for failure to pay premium and seizes upon any deficiency to invalidate lapses. American General argues that Allen Stein should not have been confused by the May 18, 2009 and any confusion is feigned. Allen Stein most certainly was <u>not</u> confused by the May 18, 2009

notice because he never received that notice. The fact is, however, that because the notice was less than "clear and unequivocal" through its identification of differing amounts and by failing to identify the place to whom payment must be sent, the notice itself fails as a matter of law.

American General also does not meaningfully distinguish *Berkshire Settlements, Inc. v. Ashkenazi*, 2011 WL 5974633 (E.D.N.Y.). American General claims that its July 20, 2009 communication was not an offer to accept a replacement check but fails to offer any suggestion as to what purpose that letter was intended to serve. If the July 20, 2009 communication was not an offer to accept a replacement check then what was it?

Finally, American General's argument that it has proved it mailed the May 18, 2009 notice fails as a matter of law because, by its own admission, the information concerning the mailing was not based on personal knowledge but rather it was based upon information obtained by someone who was not employed at the mailing facility at the time of mailing through his reading of a Piney Bowes' manual. Such reliance fails, as a matter of law, to establish mailing.

## ARGUMENT

### A.    AMERICAN GENERAL MISQUOTES THE MAY 18, 2009 NOTICE

The Trust argued that it is entitled to summary judgment because American General misidentified the due date by one day by requiring payment to be received "prior to July 20, 2009." In reality, the payment was due by July 20, 2009 not prior to July 20, 2009 as the notice states. To counter this argument, American General pontificates that:

first day after May 18, 2009, fell on Saturday, July 18, 2009. On the same day the Policy entered

grace, American General sent the May 18, 2009, Grace Period Notice to the Trust, advising it of

the deficiency and stating that $22,361.91 in premium was needed by July 20, 2009, a date

beyond the technical expiration of the grace period. Thus, American General provided the Trust

the required time to make payment of premium pursuant to the Policy terms and New York law.

*See* N.Y. Ins. Law § 3203(a)(1).

Memorandum of Law, Page 9.

Then, in an effort to reiterate that the notice stated that payment must be received "by

July 20, 2009", American General puts the language in quotes:

> However, even if the May 18, 2009, Grace Period Notice should have said "on or before
>
> July 20, 2009," as opposed to "by July 20, 2009," the Trust was well aware of an impending
>
> lapse, and Plaintiff's failure to allege any injury based on the purported discrepancy in the

The notice itself, however, stated:

> Even though you may have been making regular premium payments on your policy, the
> current values are insufficient to cover the monthly charges due May 18, 2009. This
> policy is in its grace period and will terminate without value unless a payment of
> $22,361.91 is received prior to July 20, 2009.
>
> The minimum quarterly premium required is 17,175.00. If your billing amount is less
> than this amount, future billings will be adjusted upon receipt of your grace period
> payment. If your policy has a loan, please pay your loan interest due. Your policy
> may have gone into grace due to unpaid loan interest.

New York Insurance Law § 3211 sets forth the requirements of the notice:

> (b) The notice required by paragraph one of subsection (a) hereof shall:

>> (2) state the amount of such payment, the date when due…

Applying §3211(a)(2) to the facts here, American General concedes that the "due date"

was July 20, 2009. The notice is void as it states that the payment must be received "prior to

July 20, 2009" which is incorrect and in violation of N.Y. Insurance Law 3211(b)(2) inasmuch as

it did not state the correct "date when due."

3

American General claims, "it is immaterial whether the due date…was incorrect in a technical sense." (Memo of Law, p. 10). There is nothing "technical" about this error. Instead of requiring payment by July 20, 2009, American General demanded payment by July 19, 2009. This error is material because New York Insurance Law §3211 requires the notice to identify the correct due date. Since the May 18, 2009 failed to identify the correct due date, the Trust is entitled to summary judgment.

### B.   THE INCONSISTENCIES IN THE MAY 18, 2009 NOTICE ARE FATAL

It does not matter whether or not Allen Stein was actually confused by the confusing May 18, 2009 notice because the inconsistencies, by themselves, render the notice void.  *Maloney v. John Hancock Mut. Life Ins. Co.*, 271 F.2d 609 (2nd Cir. N.Y. 1959).

New York law "has long been established that forfeiture of life insurance coverage for late payment of premiums is not favored in the law and that courts are always prompt to seize hold of any circumstances which permit the policy to remain in force." *Speziale v National Life Ins. Co.*, 159 Fed Appx. 253 (2nd Cir. 2005). Also see *In re Preston's Will*, 29 N.Y.2d 364 (N.Y. 1972); *Government Employees Ins. Co. v. Mizell,* 36 A.D.2d 452, 453-454 (N.Y. App. Div. 4th Dep't 1971),( the court held that[c]ancellation notices must be mailed in strict accordance with the applicable statutes, must allow a set time before the effective date of cancellation, and must contain all  information required by the statute.   Literal compliance with the provisions of the policy and statutes is the rule.); *Reliance Ins. Co. v. Rabinowitz,* 65 A.D.2d 619 (N.Y. App. Div. 2d Dep't 1978; *Duhs v. Royal Globe Ins. Co.,* 63 A.D.2d 992, 992-993 (N.Y. App. Div. 2d Dep't 1978); *Nassau Ins. Co. v. Hernandez*, 65 A.D.2d 551, 552 (N.Y. App. Div. 2d Dep't 1978) ("there must be strict compliance with the [lapse notice] statutory condition.); *Messing v. Nationwide Mut. Ins. Co.,* 42 A.D.2d 1030, 1031 (N.Y. App. Div. 4th Dep't 1973).

Here, Stein did not receive the May 18, 2009 but American General concedes that the notice provided multiple amounts due and did not identify to whom payment must be made.

Not only must the required information be included in the notice, the requirement of a notice of cancellation is for the benefit of the insured and a notice of cancellation is not valid unless it is clear, unconditional and unequivocal. *Victor v. Turner*, 113 A.D.2d 490, 498 (2nd Dept. 1985). Here, the notices were anything but clear, unconditional and unequivocal.

In *Zeligfeld v. Phoenix Life Insurance Company*, 2013 N.Y. Misc. LEXIS 1574 (April 17, 2013), the Court invalidated the notice even though it contained the actual name and address to where premium payments must be made because it also included two additional names and addresses which made the notice confusing as a matter of law. The Court held:

> [T]he initial notice listed Phoenix and two other entities at the top of the page above a post office box address. In addition, the notice had the address for "Simkowitz & Company" listed to the right of the address of the Trust. Given that the body of the notice states that the payment of "$37,478.42 must be received by us," without identifying who "us" is, there is at least some facial ambiguity with the notice, which may be sufficient to deem it defective with respect to the statutory requirement that the notice state to whom and where payment is to be made.

In fact, American General recognized that the varying names can be confusing in its July 20, 2009 letter seeking a replacement check and specifically included additional language to clarify which provided "[w]e can only deposit checks made payable to an American General Life Company or AIG."

Since the notice failed to identify to whom payment must be made, can be reasonably understood as requiring the wrong amount and having the wrong due date, American General failed to comply with New York Insurance Law §3211(b)(2) which requires the notice to "state the amount of such payment, the date when due." Thus, even if sent, the notices are legally void and the Trust is entitled to summary judgment.

C.     **THE LAPSE OF THE POLICY IS INVALID BECAUSE AMERICAN GENERAL OFFERED THE TRUST TO SEND A REPLACEMENT CHECK**

American General does not meaningfully distinguish *Berkshire Settlements, Inc. v. Ashkenazi*, 2011 U.S. Dist. LEXIS 136663 (E.D.N.Y. Nov. 29, 2011). That court held that John Hancock offered dishonored checks to be replaced with a valid check and therefore John Hancock could not lapse the policy if the dishonored checks were replaced. The facts here are exactly the same.

The Trust did not ignore its obligation to pay premiums. The Trustee never received the May 2009 lapse warning but he did receive a premium notice from American General dated June 3, 2009 which required payment of $15,000 and had a due date of July 17, 2008.  On July 15, 2009, the Trust sent a check in the amount of $15,000 by overnight mail to American General. The check contained a scriveners error in that instead of being made payable to American General Life Insurance Company it was made payable to the insured. The Trust accidently inserted the insured's name into the "pay to the order of" section of the check instead of the "memo" section.  On July 20, 2009, American General sent a letter by regular mail that the check could not be cashed and stated, "The check is not made payable to an American General Life Company or AIG. Please submit another check. We can only deposit checks made payable to an American General Life Company or AIG. **Please correct and return to us. We will process promptly upon receipt."** (emphasis in original). The Trust immediately sent a replacement check. Like the insurer in *Bershire*, American General cannot refuse to accept a replacement check that it invited the Trust to send.

Under New York law, a written agreement which provides that it cannot be modified except by a writing, can be modified by a course of conduct or actual performance. *Puma Industrial Consulting, Inc. v. Daal Associates*, No. 84 Civ. 3137, Slip  op at 5 (S.D.N.Y. Sept. 9,

6

1986) (agent's commission reduced from contract amount due to parties' course of conduct),

modified, 808 F.2d 982 (2d Cir. 1987); *Hohmann & Barnard, Inc. v. Sciaky Bros.*, 333 F.2d 5, 9

(2d Cir. 1964) (course of conduct was fully executed and constituted a modification of written

contract despite prohibition in contract against modification); *Webster's Red Seal Publications,*

*Inc. v. Gilberton World Wide Publications, Inc.*, 67 A.D. 2d 339, 341, 415 N.Y.S. 2d 229, 231

(1979) ("modification of agreement implied in fact from the course of the conduct of the

parties"), *aff'd*, 53 NY 2d 643, 421 N.E.2d 118, 438 N.Y.S. 2d 998 (1981). Furthermore, valid

and enforceable rights under a contract may be waived by a subsequent writing or a subsequent

course of conduct. *Jefpaul Garage Corp. v. Presbyterian Hospital*, 61 N.Y. 2d 442, 462 N.E.2d

1176, 474 N.Y.S.2d 458 (1984).

 American General makes the incredulous claim that the July 20, 2009 letter was not an

invitation to send a replacement check but does not make any attempt to explain any other

function for that letter.

 Applying these principles here, American General's conduct modified its obligations and

its refusal to accept the replacement check voids the lapse of the policy.

 **D. JEFFREY CISZEWSKI CANNOT HAVE PERSONAL KNOWLEDGE OF
THE MAILING PROCEDURES AT THE HOUSTON FACILITY WHEN
THE MAY 18, 2009 NOTICE WAS SENT BECAUSE HE DID NOT WORK
THERE AT THAT TIME**

 American General failed to keep any records concerning the actual mailing of the May

18, 2009 notice. Instead of trying to prove that the notice was actually mailed, American General

attempts to show its mailing procedure. In order to prove mailing, though, American General

must show Pitney Bowes' Houston office's practice and procedure "in the regular course of their

business." *Nassau Ins. Co. v. Murray*, 46 N.Y.2d 828, 829 (1978). In *Badio v. Liberty Mut. Fire*

*Ins. Co.*, 12 A.D.3d 229, 785 N.Y.S.2d 52 (1st Dept. 2004),  the court found that an insurer is

entitled to a presumption that a letter was sent only if it presents proof of an "office practice and procedure *followed by the insurers in the regular course of their business*." (emphasis supplied) Since Mr. Ciszewski was not employed by the Houston facility at the time of the mailing, the most Mr. Ciszewski can prove through his review of the manual is what Pitney Bowes' Houston facility should have been doing but not what it actually did. Mr. Ciszewski cannot possibly testify whether or not in May 2009 the Houston facility actually followed the Pitney Bowes mailing requirements as contained in the manual because he was not there and has no other basis to conclude that the Houston facility's actual mailing procedures in May 2009 were similar to the requirements contained in the manual.

It is precisely for this reason that under New York law, the employee testifying as to office mailing procedure must have worked at the facility at the time of mailing. *Tower Ins. Co. of N.Y. v Ray & Frank Liq. Store, Inc*., 104 A.D.3d 482, 482-483 (N.Y. App. Div. 1st Dep't 2013); *Owusu v. New York State Ins*., 655 F.Supp.2d 308 (S.D.N.Y. 2009);  *Owusu v. New York State Ins*., 655 F.Supp.2d 308 (S.D.N.Y. 2009); *Tower Ins. Co. of New York v. Rite Way Corp*., 2010 WL 2754066, *2754066+, 2010 N.Y. Slip Op. 31640(U), 31640(U)+ (Trial Order) (N.Y.Sup. Jun 23, 2010 NO. 105179/2006).

It is not enough to show what the mailing procedure at Pitney Bowes' Houston facility was designed to be but also what it actually was. Since Mr. Cizsewski cannot testify as to the Houston facility's actual practice, American General failed to prove it mailed the May 18, 2009 notice.

Furthermore, on July 15, 2009, the Trust submitted $15,000 in premium payments which further indicates that the Trust received the June 3, 2009 notice requiring $15,000 and not the May 18, 2009 notice which required two other amounts. American General Life Insurance

Company has not provided proof and cannot provide proof that the May 18, 2009 lapse warning

letter was sent.

## **CONCLUSION**

For all of the foregoing reasons, the Trust respectfully requests that this Court award the

Trust summary judgment and such other relief as this Court may deem fit and proper.

Dated:  Kew Gardens, New York
   October 15, 2013

             LIPSIUS-BENHAIM LAW, LLP
             Attorneys for Plaintiff

       By: _____
             Ira S. Lipsius
             David BenHaim
             Cheryl D. Lipsius
             80-02 Kew Gardens Road, Suite 1030
             Kew Gardens, New York 11415
             212-981-8440

## **Certificate of Service**

I hereby certify that on October 15, 2013, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants.

David BenHaim, Esq.